## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Abdullah Haydar,
     Plaintiff,

vs.

Amazon Corporate, LLC, a foreign
limited liability corporation; Garrett
Gaw, an individual; Peter Faricy, an
individual; Joel Mosby, an individual,

     Defendants.

Case No.

Hon.

_____

David A. Nacht (P47034)
Joseph X. Michaels (P79084)
NACHTLAW, PC
Attorneys for Plaintiff
101 N. Main St. Ste.555
Ann Arbor, MI 48104
(734) 663-7550
dnacht@nachtlaw.com
jmichaels@nachtlaw.com

_____

### COMPLAINT AND JURY DEMAND

Now Comes Plaintiff, Abdullah Haydar, by and through his attorneys, NachtLaw, P.C. to bring the following causes of action of Defendants Amazon Corporate LLC, Garrett Gaw, Peter Faricy, and Joel Mosby, and alleges the following:

### INTRODUCTION

1.    This is an employment discrimination and retaliation suit. Plaintiff

Abdullah Haydar ("Mr. Haydar") is highly accomplished technology manager who performed exceptionally at his job at Amazon. Mr. Haydar's work created billions in revenue for Amazon, and he was widely praised for his performance by peers, direct reports, and colleagues from across Amazon worldwide.

2.      Despite this performance, Mr. Haydar, a Muslim U.S. Citizen of Syrian descent, was repeatedly subjected to demeaning comments directed at his national origin, religion, and marital status, given false and derogatory performance reviews, passed over for promotion in favor of less successful Caucasian peers, and denied transfers and other career opportunities.

3.      Throughout these discriminatory actions, Mr. Haydar repeatedly sought the help of Amazon Human Resources, to no avail. Then, in August 2015, after an explosive *New York Times* article exposed systemic workplaces abuses at Amazon, CEO Jeff Bezos sent an email requesting that any employee experiencing abuse contact him directly. Mr. Haydar responded and requested Mr. Bezos' help in dealing with this harassment and discrimination. However, soon after Mr. Haydar's plea for help from Mr. Bezos, Mr. Haydar faced further retaliation, including the eventual termination of his employment.

4.      Mr. Haydar brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., the Elliott-Larsen Civil Rights Act, MCL § 37.210 *et seq.,* and Michigan common law to remedy the illegal and

unethical employment discrimination and retaliation perpetrated against him.

## JURISDICTION, PARTIES AND VENUE

5.      Plaintiff Abdullah Haydar is an individual who resides Wayne County, Michigan.

6.      Defendant Amazon Corporate, LLC ("Amazon") is a foreign limited liability corporation, organized under the laws of the State of Washington, that regularly conducts business in the State of Michigan.

7.      Defendant Garrett Gaw is an employee of Defendant Amazon and an individual who, upon information and belief, resides in the State of Michigan.

8.      Defendant Peter Faricy is an employee of Defendant Amazon and an individual who, upon information and belief, resides in the State of Washington, but regularly visits the State of Michigan to conduct business.

9.      Defendant Joel Mosby is an employee of Defendant Amazon and an individual who, upon information and belief, resides in the State of Michigan.

10.     At the time of his termination, Mr. Haydar was employed at Amazon's office in Detroit, Michigan located in this judicial district.

11.     Jurisdiction is proper in this Court under 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. § 1331, and 28 U.S.C. § 1343(a)(4).

12.     Jurisdiction over supplemental state law claims is proper under 28 U.S.C. § 1367, as they arise from the same case and controversy.

13.    Venue is proper in this Court under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391 as this is the judicial district in which the unlawful employment practices occurred and the relevant employment records are kept.

14.    Mr. Haydar filed charges of national origin discrimination, and religious, discrimination and retaliation against Defendant Amazon with the Detroit Field Office of the Equal Employment Opportunity Commission (EEOC) in February 2016. The EEOC issued a Right to Sue to Mr. Haydar on July 20, 2016.

## STATEMENT OF FACTS

### A. Background Information

15.    Mr. Haydar is an American-born U.S. citizen of Syrian descent.

16.    Mr. Haydar is a practicing Muslim-American.

17.    Amazon is a well-known electronic commerce corporation that is headquartered in Seattle, Washington and has an office in Detroit, Michigan.

18.    Amazon hired Mr. Haydar in November 2012 as a Senior Manager, Selection Tech. Mr. Haydar initially reported to Ramiah Kandasamy in Amazon's Seattle office.

### Mr. Haydar seeks guidance from Defendant Faricy and is subject to Disparaging and Discriminatory Remarks

19.    In June 2013, it was well-known in Mr. Haydar's department that Mr. Kandasamy suffered from a lack of leadership and the skills necessary to run a team at Amazon.

20.    At this time, Mr. Haydar sought the assistance of Defendant Peter Faricy, Mr. Kandasamy's supervisor and Vice President at Amazon, regarding issues with Mr. Kandasamy's leadership.

21.    Mr. Faricy told Mr. Haydar to "keep your mouth shut and do your job."

22.    Around this same time, Mr. Faricy, a white male, began a pattern of making disparaging remarks related to Mr. Haydar's ethnicity, religion, and marital status, both privately and in front of large groups of Amazon employees, which continued unaddressed for the next two years.

23.    Mr. Faricy regularly commented on Mr. Haydar's marital status and situation.

24.    At an offsite leadership meeting in Detroit, Mr. Faricy commented on Mr. Haydar's need to be coached on being a "good husband" and was forced to recite lines to be conveyed to his wife to a group along with a recently-divorced colleague.

25.    Mr. Faricy also regularly made ethnically and religious tinged comments on Mr. Haydar's marriage that evidenced his animus toward Muslim and Arab-Americans.

26.    Mr. Faricy made comments to Mr. Haydar to the effect that "you people" do not treat your wives properly.

***Mr. Faricy Twice Promotes Ineffective Employees to Leadership positions instead of Mr. Haydar, and Falsifies Performance Issues with Mr. Haydar***

27.    In October 2013. Mr. Haydar's department was reorganized, and Mr.

5

Kandasamy was removed due to ineffective leadership and other issues.

28.     Thereafter, Mr. Haydar reported to Jim Joudrey. In December 2013, after a period of extensive success and growth at Amazon, Mr. Haydar received his first meaningful review at Amazon during a mid-year performance evaluation and received a rating of Achieves/Solid Strength.

29.     In December 2013, Mr. Faricy promoted Mr. Haydar's then-peer Defendant Joel Mosby.

30.     Mr. Faricy made this decision on his own without consulting annual performance data which was not yet available, and would have shown Mr. Mosby's poor performance.

31.     Thereafter, Mr. Haydar reported to Mr. Mosby. Mr. Haydar subsequently took on a role at Amazon's office in his hometown of Detroit, Michigan. Mr. Haydar stared in Detroit part time on January 1, 2014, and began full time February 1, 2014, but continued to report to Mr. Mosby.

32.     In May 2014, Mr. Mosby and Mr. Faricy's discrimination and retaliation began to affect Mr. Haydar's performance evaluations. After a full-year review, Mr. Haydar received a review of Achieves/Development needed.

33.     Mr. Haydar escalated the issue to Madonna Cole, an HR representative, who sated that although the rating was not changed, Mr. Haydar was otherwise performing "very well."

34.     Later, Mr. Mosby would falsely claim that he placed Mr. Haydar on a PIP May through September 2014.

35.     Simultaneously, Mr. Mosby's was given a positive review to justify his promotion to a larger job scope despite his failings for the entire year.

36.     Mr. Mosby received a substantial compensation increase as a result while Mr. Haydar received no compensation increase due to his discriminatory rating.

### Mr. Haydar Continues his Success at Amazon Despite his Discriminatory Performance data

37.     In November 2014, Defendant Mosby attempted to formally place Mr. Haydar on a Performance Improvement Plan ("PIP").

38.     Defendant Mosby's stated reason for this was Mr. Haydar's response to Mr. Mosby's mistreatment of an employee who was in the process of transferring from Seattle to join one of Mr. Haydar's teams in Detroit.

39.     Mr. Mosby exceedingly delayed the employee's transfer in violation of Amazon's internal transfer policies, which harmed the employee and his family.

40.     Mr. Haydar privately challenged Mr. Mosby regarding this mistreatment during their regularly scheduled one-on-one meeting.

41.     Apparently due to Mr. Mosby's discriminatory animus and displeasure at being challenged for his behavior by a Muslim and Arab American, Mr. Mosby immediately sought HR approval to place Mr. Haydar on a PIP.

42.     Amazon HR, however, told Mr. Mosby to "walk the issue back" because it was inappropriate to place a successful employee on a PIP for one disagreement.

43.     In fact, during the entire year of 2014 and through September 2015, Mr. Haydar received widespread praise for his work while he exceeded all of his goals for delivery of projects, improving team operations, hiring, and promoting many team members for their successful career growth under Mr. Haydar's leadership.

44.     Mr. Haydar's work from mid-2013 through 2014 was frequently requested as a role model template for transitioning teams across Amazon offices, for splitting large teams into new organizations, and for leading teams across Amazon's worldwide sites.

45.     Mr. Haydar was sought as a mentor by dozens by Amazon colleagues and continually mentored others across multiple worldwide sites, all of whom praised Mr. Haydar highly for his successful mentorship.

46.     In July 2014, Mr. Haydar was invited to speak an internal Amazon conference to share his expertise and experience so that others could replicate his strong successes.

47.     This speech was viewed via video streaming across Amazon and was well received by Mr. Haydar's worldwide audience with many positive feedback messages received.

48.     Due to Mr. Haydar's successful efforts, his teams launched a record number of new features in 2014 and 2015, which grew his business unit from driving $2 Billion in revenue for Amazon in 2013 to $4 Billion in 2014 to $6.8 Billion in 2015.

49.     As a result of these successes, Mr. Mosby took credit for Mr. Haydar's work as his direct report and received a formal promotion to Director in September 2014, based primarily on Mr. Haydar's successes.

50.     Mr. Mosby again received a substantial compensation increases with his promotion.

51.     After Mr. Mosby's promotion. Garrett Gaw, a Caucasian male, and another of Mr. Haydar's former peers was promoted to be Mr. Haydar's new supervisor.

52.     Mr. Gaw was promoted despite objectively failing performance prior to his promotion.

53.     However, Mr. Gaw continued to coordinate with Mr. Mosby to retaliate and discriminate against Mr. Haydar.

54.     This included the improper transfer out of two of Mr. Haydar's team members in December 2014 and January 2015 (which led to these teams suffering significant attrition and project failures).

55.     Mr. Gaw also continued his discriminatory evaluations of Mr. Haydar's

performance in 2015 as Mr. Mosby had done in 2014.

56.    Mr. Haydar again sought HR's assistance as he was being inappropriately excluded from key meetings, emails, and mistreated when he did participate in meetings.

57.    HR told Mr. Haydar to simply work with Mr. Gaw to resolve these issues.

58.    In January 2015 Mr. Haydar sought a meeting with Mr. Mosby and Mr. Gaw to confirm his 2014 performance record ahead of the annual reviews.

59.    During this meeting, Mr. Mosby confirmed that Mr. Haydar had exceeded all of his 2014 goals and had a stellar performance record.

60.    In February 2015, Mr. Haydar inquired to Mr. Joudrey, his former supervisor and another director at Amazon regarding their repeated promises in 2014 to nominate Mr. Haydar for the "bar raiser" program, which is a program for top performers who lead recruiting events for Amazon.

61.    After Mr. Haydar's inquiries, Mr. Gaw informed Mr. Haydar that he was ineligible for the bar raiser program since Mr. Gaw was going to rate Mr. Haydar as a poor performer for the prior year.

62.    Mr. Haydar then challenged Mr. Gaw regarding this baseless performance rating which directly contradicted the review transfer meeting a few weeks earlier.

*Mr. Haydar Informs HR of Defendants' Discriminatory Conduct and is Subjected to Further Retaliation*

63.     After this confrontation, Mr. Haydar escalated his concerns regarding his falsified performance records, hostile environment, retaliation, and ethnic discrimination/bias in promotions and performance reviews to Ms. Shelley Cerio, VP of HR at Amazon.

64.     On February 2, 2015 in an email to Ms. Cerio, Mr. Haydar raised many of these issues, including the retaliation, falsified performance reviews, and Mr. Faricy's ethnically-tinged remarks and comments regarding his marital status.

65.     During a follow up telephone call on March 5, 2015, Mr. Haydar expressly stated that he believed he was being discriminated and retaliated against because of his national origin and religion, and that many of the comments by Mr. Faricy and others represented discriminatory stereotypes about Muslim and Arab Americans.

66.     Ms. Cerio then purported to conduct an "investigation." However, less than a month later Ms. Cerio informed Mr. Haydar that his performance records were accurate and that he was not subject to any hostile environment, discrimination or retaliation.

67.     In a matter of months after complaining to Ms. Cerio of discrimination, in April 2015, Mr. Haydar was given another manufactured negative rating based on two key factors: a completely unfounded assertion of "mixed results" in regards to

Mr. Haydar's job performance against his goals (which was contradicted by all objective measures) and a statement of widespread "broken trust" in regards to his relationships with "key peers".

68.     The "broken trust" claim was actually based solely on cherry-picked feedback provided by a single employee, whereas the overwhelming majority of Mr. Haydar's peer feedback was excellent.

69.     To escape this discrimination, in April 2015, Mr. Haydar also agreed to transfer to join another department at Amazon ran by Todd Weatherby. However, he was prevented from doing so due to Amazon's policies and the discriminatory and retaliatory performance evaluations.

70.      Due to widespread recognition of Mr. Haydar's successes from mid-2013 through mid-2015, he was repeatedly recruited by senior leaders across Amazon to join their departments.

71.     Mr. Weatherby asked Mr. Haydar to accelerate the transfer process due to Mr. Weatherby's strong belief that Mr. Haydar was an excellent candidate for Mr. Weatherby's team after multiple interviews with colleagues and feedback from Mr. Haydar's peers.

72.     After Mr. Haydar submitted the transfer application, Mr. Weatherby indicated he would work with HR to seek an exception to the transfer rules preventing the transfer of employees with poor performance evaluations.

73.     However, after Mr. Weatherby met with Mr. Gaw and HR, Mr. Weatherby rescinded his offer to transfer Mr. Haydar into his department.

74.     After Mr. Haydar's reporting of discriminatory and retaliatory behavior in February 2015, Mr. Haydar repeatedly heard from Amazon HR that he should consider a new career outside Amazon because he was not a "good fit" for Amazon.

75.     HR and his supervisors began preparing a performance improvement plan ("PIP"), a sure sign that they were contemplating terminating Mr. Haydar.

76.     In May 2015, with Mr. Haydar facing an imminent PIP, he wrote to Mr. Jeff Bezos, CEO of Amazon, expressing his frustration with the hostile environment, biased promotions, discriminatory performance reviews, and HR's decision to block Mr. Haydar's transfer to Mr. Weatherby's department.

77.     Mr. Bezos did not respond.

78.     In early June 2015, a PIP was initiated by Mr. Gaw and Mr. Derek Oehler, HR Business Partner.

79.     The PIP stated that Mr. Haydar needed to repair his relationship with 10 key peers with whom he had "substantially broken trust" over the prior year since that was the primary basis of his failing rating.

80.     Mr. Haydar immediately met with each of these peers who were willing to meet, with results that disproved "broken trust" between Mr. Haydar and others. However, these results were ignored by HR.

81.     In late June 2015, Mr. Haydar met with Mr. Gaw and Mr. Oehler to review his PIP status after 30 days.

82.     During that meeting, Mr. Gaw and Mr. Oehler told Mr. Haydar that he was doing very well and that the PIP needed to be extended just for Mr. Haydar to meet Mr. Mosby and another individual, both of whom had repeatedly cancelled these meetings when Mr. Haydar attempted to schedule them.

83.     Mr. Haydar was told that the next PIP check-in would occur within 30 days, however no such meeting occurred within that time frame.

84.     In late August 2015, Mr. Haydar was suddenly required to meet with Mr. Gaw and HR after more than 60 days without any PIP updates.

85.     Mr. Haydar was then told for the first time that there were new failures in his PIP and that he was in danger of failing. Specifically, Mr. Gaw and HR brought up issues related to Mr. Haydar's participation in weekly operations meetings and "architectural vision" meetings.

86.     Mr. Haydar immediately provided written documentation from the participants in those meetings indicating that Mr. Haydar was in fact a strong performer in those meetings.

87.     HR, as they had done every previous time Mr. Haydar provided refuting documentation, simply ignored this information.

**The New York Times *Exposes Amazon's Abusive Workplace, Mr. Haydar Reaches out to Mr. Bezos, and is Terminated in Retaliation***

88.    While Mr. Haydar was experiencing these issues, on August 15, 2015 *The New York Times* published a 6,000-word article titled "Inside Amazon: Wrestling Big Ideas in a Bruising Workplace."

89.    *The New York Times* article recounted a systemic shocking and illegal workplace at Amazon, including rampant discrimination and retaliation. The article sent shockwaves through Amazon and the broader tech community.

90.    In response to the article, Mr. Bezos sent an email to all Amazon employees worldwide asking them to email him directly if they were facing abusive treatment.

91.    Mr. Bezos stated as follows:

**Dear Amazonians,**

**If you haven't already, I encourage you to give this (very long) New York Times article a careful read.**

**I also encourage you to read this very different take by a current Amazonian.**

**Here's why I'm writing you. The NYT article prominently features anecdotes describing shockingly callous management practices, including people being treated without empathy while enduring family tragedies and serious health problems. The article doesn't describe the Amazon I know or the caring Amazonians I work with every day. But if you know of any stories like those reported, I want you to escalate to HR. You can also email me directly at jeff@amazon.com. Even if it's rare or isolated, our tolerance for any such lack of empathy needs to be zero.**

The article goes further than reporting isolated anecdotes. It claims that our intentional approach is to create a soulless, dystopian workplace where no fun is had and no laughter heard. Again, I don't recognize this Amazon and I very much hope you don't, either. More broadly, I don't think any company adopting the approach portrayed could survive, much less thrive, in today's highly competitive tech hiring market. The people we hire here are the best of the best. You are recruited every day by other world-class companies, and you can work anywhere you want.

I strongly believe that anyone working in a company that really is like the one described in the NYT would be crazy to stay. I know I would leave such a company.

But hopefully, you don't recognize the company described. Hopefully, you're having fun working with a bunch of brilliant teammates, helping invent the future, and laughing along the way.

Thank you,

Jeff

92.    In mid-September 2015, Mr. Haydar responded to Mr. Bezos' email and included substantial details of Amazon's discrimination and retaliation.

93.    Mr. Haydar asked Mr. Bezos to live up to his promise and resolve a clear case of discrimination and abuse.

94.    Again, Mr. Bezos did not respond.

95.    One week later, on September 22, 2015, Mr. Haydar was terminated from his employment from Amazon without any stated cause.

## CAUSES OF ACTION

### COUNT I
### NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 42 U.S.C § 2000e-2(a)(1)
### *(Against Defendant Amazon)*

96.  Plaintiff herein reincorporates its allegations in the paragraphs above.

97.  At all relevant times, Plaintiff was an employee, and Defendant Amazon was his employer under the definitions contained in Title VII, 42 U.S.C. § 2000e(b),(f).

98.  At all relevant times, Defendant Amazon engaged in interstate commerce and employed more than 15 or employees and is thus subject to the requirements of Title VII.

99.  Plaintiff is an American of Syrian descent and a member of a protected group based on his national origin.

100.  Defendant Amazon unlawfully discriminated against Plaintiff because of his national origin.

101.  Plaintiff was subjected to adverse employment actions, including, but not limited to, the creation of a hostile work environment and termination.

102.  As a direct and proximate result of Defendant Amazon's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation

and embarrassment; loss of professional reputation.

103.   Defendant Amazon's conduct was with malice and recklessly indifferent to Plaintiff's federally protected rights, entitling him to punitive damages.

**COUNT II**
**RELIGIOUS DISCRIMINATION IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 42 U.S.C § 2000e-2(a)(1)**
*(Against Defendant Amazon)*

104.   Plaintiff herein reincorporates its allegations in the paragraphs above.

105.   At all relevant times, Plaintiff was an employee, and Defendant Amazon was his employer under the definitions contained in Title VII, 42 U.S.C. § 2000e(b),(f).

106.   At all relevant times, Defendant Amazon engaged in interstate commerce and employed more than 15 or employees and is thus subject to the requirements of Title VII.

107.   Plaintiff is a member of a protected group based on his religion, Muslim.

108.   Defendant Amazon unlawfully discriminated against Plaintiff because of his religion.

109.   Plaintiff was subjected to adverse employment actions, including, but not limited to, the creation of a hostile work environment and termination.

110.   As a direct and proximate result of Defendant Amazon's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of

earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation.

111. Defendant Amazon's conduct was with malice and recklessly indifferent to Plaintiff's federally protected rights, entitling him to punitive damages.

**COUNT III**
**RETALIATION IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 42 U.S.C § 2000e-3(a)**
***(Against Defendant Amazon)***

112. Plaintiff herein reincorporates its allegations in the paragraphs above.

113. At all relevant times, Plaintiff was an employee, and Defendant Amazon was his employer under the definitions contained in Title VII, 42 U.S.C. § 2000e(b),(f).

114. At all relevant times, Defendant Amazon engaged in interstate commerce and employed more than 15 or employees and is thus subject to the requirements of Title VII.

115. Plaintiff engaged in protected activity under Title VII by repeatedly opposing Defendant Amazon's discrimination and harassment perpetrated against him on the basis of his religion and national origin, including by contacting HR and CEO Jeff Bezos.

116.   Because he engaged in this protected activity, Plaintiff was subjected to adverse employment actions, including, but not limited to, the creation of a hostile work environment and termination.

117.   As a direct and proximate result of Defendant Amazon's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation.

118.   Defendant Amazon's conduct was with malice and recklessly indifferent to Plaintiff's federally protected rights, entitling him to punitive damages.

## COUNT IV
## NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF
## THE ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2202(1)(a)
### *(Against all Defendants)*

119.   Plaintiff herein reincorporates its allegations in the paragraphs above.

120.   At all relevant times, Plaintiff was an employee, and Defendant Amazon was his employer under the definitions contained in ELCRA, MCL 37.2201(a).

121.   At all times relevant to this suit, individual Defendants Gaw, Mosby, and Faricy acted as the agents of Defendant Amazon and thus acted as Plaintiff's employer according to MCL 37.2201(a).

122.   Plaintiff is an American of Syrian descent and a member of a protected group based on his national origin.

123.   Defendants unlawfully discriminated against Plaintiff because of his national origin.

124.   Plaintiff was subjected to adverse employment actions, including, but not limited to, the creation of a hostile work environment and termination.

125.   As a direct and proximate result of Defendants' wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation.

**COUNT V**
**RELIGIOUS DISCRIMINATION IN VIOLATION OF**
**THE ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2202(1)(a)**
*(Against all Defendants)*

126.   Plaintiff herein reincorporate its allegations in the paragraphs above.

127.   At all relevant times, Plaintiff was an employee, and Defendant Amazon was his employer under the definitions contained in ELCRA, MCL 37.2201(a).

128.   At all times relevant to this suit, individual Defendants Gaw, Mosby, and Faricy acted as the agents of Defendant Amazon and thus acted as Plaintiff's

employer according to MCL 37.2201(a). Plaintiff is a member of a protected group based on his religion, Muslim.

129.    Defendant Amazon unlawfully discriminated against Plaintiff because of his religion.

130.    Plaintiff was subjected to adverse employment actions, including, but not limited to, the creation of a hostile work environment and termination.

131.    As a direct and proximate result of Defendants' wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation.

**COUNT VI**
**MARITAL STATUS DISCRIMINATION IN VIOLATION OF**
**THE ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2202(1)(a)**
*(Against all Defendants)*

132.    Plaintiff herein reincorporate its allegations in the paragraphs above.

133.    At all relevant times, Plaintiff was an employee, and Defendant Amazon was his employer under the definitions contained in ELCRA, MCL 37.2201(a).

134.    At all times relevant to this suit, individual Defendants Gaw, Mosby, and Faricy acted as the agents of Defendant Amazon and thus acted as Plaintiff's employer according to MCL 37.2201(a).

135.   Plaintiff is a member of a protected group based on his religion, Muslim.

136.   Defendant Amazon unlawfully discriminated against Plaintiff because of his marital status.

137.   Plaintiff was subjected to adverse employment actions, including, but not limited to, the creation of a hostile work environment and termination.

138.   As a direct and proximate result of Defendants' wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation.

## COUNT VII
## RETALIATION IN VIOLATION OF
## THE ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2701
### *(Against all Defendants)*

139.   Plaintiff herein reincorporates its allegations in the paragraphs above.

140.   Defendant Amazon is a corporate entity defined as a person as defined in MCL 37.2103(g).

141.   At all times relevant to this suit, individual Defendants Gaw, Mosby and Faricy acted as the agents of Defendant Amazon and thus acted as Plaintiff's employers according to MCL 37.2201(a).

142.   Plaintiff repeatedly engaged in conduct protected by ELCRA's anti-retaliation provision including, contacting HR regarding discrimination and harassment based on his ethnicity, national origin, and marital status, and contacted Jeff Bezos regarding these issues.

143.   Defendants unlawfully retaliated against Plaintiff because of his protected conduct.

144.   Plaintiff was subjected to adverse employment actions, including, but not limited to, the creation of a hostile work environment and termination.

145.   As a direct and proximate result of Defendants' wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation.

**COUNT VII**
**TERMINATION IN VIOLATION OF**
**<u>MICHIGAN PUBLIC POLICY</u>**
***(Against all Defendants)***

146.   Plaintiff herein reincorporates its allegations in the paragraphs above.

147.   At all times relevant to this suit, Defendant Amazon was Plaintiff's employer, and individual Defendants Gaw, Mosby, and Faricy acted as the agents of Defendant Amazon.

148.   The State of Michigan has a strong public policy against discrimination and retaliation on the basis of religion, national origin, and marital status as evidenced by the Elliott-Larsen Civil Rights Act, MCL 37.2101 and other legislative and administrative enactments.

149.   Defendants terminated Plaintiff because of his national origin, religion, marital status, and because of his opposition to the discrimination on these unlawful bases. In so doing, Defendants violated clearly-defined Michigan public policy,

150.   As a direct and proximate result of Defendants' wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation.

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff requests the following relief:

(a) Lost wages and benefits in an amount to be proved at trial;

(b) Compensatory damages in an amount to be proved at trial, including compensation for the emotional and physical toll of the abusive treatment Plaintiff faced during his tenure at Amazon;

(c) Plaintiff exemplary damages;

(d) Punitive damages;

25

(e) Attorneys' fees and costs;

(f) Injunctive relief requiring Defendant to take effective steps to prevent ongoing discrimination and harassment of employees; fully investigate and appropriately respond to all conduct that may constitute discrimination and harassment; and mitigate the effects of discrimination and harassment by eliminating any hostile environment that may impact any employees who make claim as victims.

(g) Prejudgment interest; and

(h) Such other and further relief as the Court deems just and proper.

> Respectfully submitted,
> NACHTLAW, P.C.
>
> /s/ Joseph X. Michaels
> David A. Nacht (P47034)
> Joseph X. Michaels (P79084)
> Attorneys for Plaintiff
> 101 N. Main Street, Ste. 555
> Ann Arbor, MI 48104
> (734) 663-7550
> dnacht@nachtlaw.com
> jmichaels@nachtlaw.com

Dated: October 14, 2016

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff, by and through his counsel, hereby demands a trial by jury as to all those issues so triable as of right.

Respectfully submitted,
NACHTLAW, P.C.

<u>/s/ Joseph X. Michaels</u>
David A. Nacht (P47034)
Joseph X. Michaels (P79084)
Attorneys for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
dnacht@nachtlaw.com
jmichaels@nachtlaw.com

Dated: October 14, 2016