# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: September 16, 2021

Mr. Michael Alan Chichester Jr.
Littler Mendelson
200 Renaissance Center, Suite 3110
Detroit, MI 48243

Mr. Jay Andrew Inman
Littler Mendelson
333 W. Vine Street, Suite 1720
Lexington, KY 40507

Mr. Joseph Xavier Michaels
Croson, Taub, & Michaels
455 E. Eisenhower Parkway
Suite 75
Ann Arbor, MI 48108

Mr. David A. Nacht
101 N. Main Street, Suite 555
Ann Arbor, MI 48104

Re: Case No. 19-2410, *Abdullah Haydar v. Amazon Corporate, LLC, et al*
Originating Case No. : 2:16-cv-13662

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc: Ms. Kinikia D. Essix

Enclosure

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0432n.06

No. 19-2410

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Sep 16, 2021
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| ABDULLAH HAYDAR, | ) ) |
| Plaintiff-Appellant, | ) ) |
| v. | ) ON APPEAL FROM THE UNITED STATES ) DISTRICT COURT FOR THE EASTERN |
| AMAZON CORPORATE, LLC; PETER FARICY, | ) DISTRICT OF MICHIGAN ) ) OPINION |
| Defendants-Appellees. | ) ) ) |

**BEFORE:** BATCHELDER, STRANCH, and NALBANDIAN, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** In this employment discrimination case, Abdullah Haydar, a senior technology manager at Amazon Marketplace, sued Amazon and the manager he claims was responsible for the discrimination, Peter Faricy. Haydar brought claims under Title VII, the Elliot-Larsen Civil Rights Act, and Michigan's public policy. The district court granted summary judgment to Amazon and Faricy (collectively "Amazon") on the retaliation, marital status discrimination, and public policy claims. Haydar's national origin and religious discrimination claims proceeded to trial and resulted in a verdict for Defendants. Haydar appeals the dismissal of his marital status and retaliation claims at summary judgment, and he challenges several evidentiary and procedural decisions the district court made in advance of and during trial. For the reasons that follow, we **AFFIRM**.

No. 19-2410, *Haydar v. Amazon Corporate, LLC, et al.*

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Abdullah Haydar, a practicing Muslim of Syrian descent, began working for Amazon in November of 2012 as a senior technology manager. He initially relocated from Detroit, Michigan to Seattle while his wife remained in Detroit, but he subsequently transferred back to Detroit.

Haydar initially reported to Ramiah Kandasamy, whose manager was Peter Faricy, the head of Amazon Marketplace. During Haydar's first performance review in 2013, Kandasamy told him that he had "serious concerns" about whether Haydar could succeed at his job or at Amazon, unless he took "immediate action to improve on [his] effective communication, active listening, diving deep, earning the trust of others, insisting on the highest standards and being right a lot." Kandasamy rated Haydar's performance as "needs improvement" (a lower rating) and his leadership at "solid strength" (a middle rating). Amazon regularly solicits peer reviews ("360 Feedback") for performance reviews, and Haydar's were mixed. After receiving the review, Haydar wrote to Faricy and criticized Kandasamy for not providing him with adequate guidance.

In December 2013, Haydar met with his new supervisor, Jim Joudrey, to discuss his upcoming performance review. Haydar sent a follow-up email noting their agreement that his rating would be "achieves" (a middle rating) or "solid strength" and that he would need improvement in certain areas of leadership. In January 2014, before the actual performance review, Joel Mosby became Haydar's supervisor. In a meeting reviewing Haydar's proposed rating, Faricy advocated for lowering the ratings that Joudrey had proposed. In the end, Haydar's performance rating was "[a]chieves," and his leadership principles rating was "[d]evelopment needed" (a lower rating), which resulted in Haydar being categorized as "least effective." Mosby specified that Haydar needed to improve his communication skills and noted that although at times

he seemed to be improving, he sometimes fell back into his old problematic conduct. At this point, Amazon considered placing Haydar on a Performance Improvement Plan, a PIP. After this review, Haydar escalated his concerns about his rating and the fairness of his evaluation process to human resources. A human resources representative investigated the complaint and informed Haydar that his rating would not be changed. Soon thereafter, Haydar became embroiled in a prolonged argument with Mosby over the transfer of another employee. Haydar again escalated his criticism of Mosby to human resources.

Haydar's third performance review was conducted by Garret Gaw, his manager as of December 2014. This review followed the same pattern of consistently negative feedback as previous reviews. Haydar received a performance rating of "achieves" and a leadership principles rating of "development needed," again placing him in the category of "least effective." Gaw articulated the same criticisms as previous managers. On February 10, 2015,[1] at the meeting finalizing performance reviews, Faricy noted:

> Was doing better, but recently "fell off the bus" and is being managed out. How do we ensure his team/leadership structure is prepared for him leaving the company? Issues in Earns Trust, Disagree and Commit and Vocally Self-critical. We are working on coaching him out.

On February 17, Gaw discussed the process for Haydar's termination with human resources. On February 20, a human resources representative recommended placing Haydar on a PIP because he had never been put on the initial PIP in 2014 due to briefly improved performance. When Haydar was informed of his negative performance review on February 24, he sent an email to Shelly Cerio in human resources. He claimed that he had "faced a pattern of biased treatment for the past 18+ months" at Amazon and that he believed this "bias exist[ed] with Peter Faricy

---

[1] These notes are dated "February 10, 2014" but they reference "Notes from Q1 2015 Marketplace OLR."

No. 19-2410, *Haydar v. Amazon Corporate, LLC, et al.*

himself as well as his directs . . . ." Haydar also said that Faricy made discriminatory comments in front of groups of employees based on his marriage, including the following:

> Peter has made subtle comments over the past 2.5 years, which in totality show a pattern of biased perspective regarding me. When I joined Amazon in late 2012, I began a slow transition process to Seattle since my wife is currently finishing up her mid-life career change to become a dentist. As part of this process, I traveled back and forth regularly between Detroit and Seattle, which my family and I had planned properly and worked through successfully. Peter seems to have thought that this was somehow a mistreatment of my wife, as he made multiple inappropriate comments on this topic. Most notably, during a June 2013 leadership offsite, Peter jokingly made me stand next to my peer who was getting married soon and have us recite lines that would convey to our wives to make them feel loved. This was done repeatedly during the 4 day offsite in front of the entire group and was embarrassing, to say the least.

Haydar then had a phone call with Cerio on March 5 in which he complained about Mosby, Faricy, and Stefan Haney, Haydar's peer who worked with him in Detroit. According to Haydar's notes made during the call, he told Cerio that Faricy was "picking on" him, acting as if he had "an inherently bad relationship with [his] wife due to [his] ethnicity or religion." When Cerio asked him to elaborate, Haydar's notes reflect that he said: "I have no idea who has what religious or ethnic biases, all I know is that peter has made inappropriate remarks about me all the way through my time at amazon and that others are receiving very positive reviews and promotions even though they're failing in their projects, operations, and hiring and I am receiving negative reviews despite being very successful." Cerio's notes reflect a slightly different exchange—that Haydar conveyed:

> Bias – it is not racial or anything like that; Bias that nobody standing up for me; I am the fall guy because I do not have anyone standing up for me . . . . Peter focuses those who manage upward; People leave because they don't want t[o] manage upward.

Cerio suggested that Anne DeCleene, an attorney working outside Marketplace, serve as a neutral investigator. She did so, conducting interviews and reviewing Haydar's performance reviews and 360 Feedback, which resulted in a 309-page report delivered on April 15, 2015.

-4-

No. 19-2410, *Haydar v. Amazon Corporate, LLC, et al.*

DeCleene did not corroborate Haydar's claims that he had been subject to any biased treatment. She likewise did not corroborate that Faricy in particular displayed any bias towards Haydar. While she did conclude that Faricy's statements about Haydar's relationship with his wife were not "tasteful," she determined that they did not indicate any discriminatory animus. DeCleene thus recommended putting Haydar on a PIP.

On April 17, Haydar emailed several members of human resources and Gaw, accusing Mosby and Haney of harassment, retribution, and creating a hostile work environment. DeCleene investigated, and again did not corroborate Haydar's allegations.

Later that month, on April 29, Faricy emailed human resources and asked, "What is the status with Abdullah? . . . Are we moving fast enough here?" The human resources representative noted Haydar's recent allegations and stated: "All that to say we will want to be buttoned up at every step with this one. It wouldn't be quick or easy, but if we manage it effectively—like the EB case—we'll get to a good outcome as quickly as possible." "EB" referred to a former Amazon Marketplace employee who made allegations of sex discrimination. She was subsequently terminated and sued Amazon.

On May 17, Haydar sent an email to Amazon CEO Jeff Bezos. He laid out the allegations noted above, complaining that different metrics had been used in his reviews than he had been told, and concluding that this practice was "illegal" because he had experienced "detrimental reliance." He also flagged "illegal favoritism" of employees who "excel in behaving sycophantically" and a human resources department that does "everything possible to protect senior leaders from reproach for their unethical and illegal activities rather than protecting me from their mistreatment and thereby also protecting Amazon." Jana Lien, one of Bezos's Executive Assistants, forwarded the email to Holly Swanson in human resources.

No. 19-2410, *Haydar v. Amazon Corporate, LLC, et al.*

Although Haydar's PIP had been written on April 17, he was not formally placed on the PIP until May 26. He had a 30-day check-in with Gaw on July 7, and Haydar noted that the most likely outcome would be extension of the PIP. Haydar later testified that in late August, he realized Amazon was not going to "agree that [he] satisfactorily completed the PIP[.]" After 60 days, his PIP was extended another 30 days, to September 25. His review stated that if he did not "immediately conform [his] conduct to Amazon's Leadership Principles at the level expected for an L7 leader," his employment would be terminated.

Haydar sent a second email to Bezos on September 16. He detailed how his situation had worsened and said that it was "irrefutably clear" based on data that had become available to him that he had "been the subject of illegal management abuse for the past 10 months, including a fraudulent review process and PIP process." He threatened to go to the media and pursue legal action if his concerns were not addressed. Lien forwarded the email to Swanson that day, who forwarded it to Cerio. Later that day, a human resources representative generated a ticket for Haydar's severance from Amazon. The representative testified that he learned about this message to Bezos verbally from a supervisor, after Haydar was terminated.

On September 22, Haydar's employment with Amazon was terminated, three days before his PIP was set to expire. Gaw made the decision to terminate, with support from human resources. He testified that Faricy had no input into the decision to terminate Haydar's employment. Haydar's replacement was male, Syrian American, and a practicing Muslim.

Haydar sent Bezos a third email on October 20 characterizing the message as the "final opportunity to resolve [his] abusive management situation before it enters the public media and legal processes." He forwarded to Bezos a lengthy email he had sent the entire company detailing his grievances. One of Bezos's Executive Assistants, John Connors, forwarded this email to

-6-

No. 19-2410, *Haydar v. Amazon Corporate, LLC, et al.*

Swanson, who in turn forwarded it to Cerio. Haydar sent a similar final email to Bezos on February 20, 2016. Lien forwarded this email to Swanson and Cerio.

### B. Procedural History

On October 14, 2016, Haydar filed a complaint in federal district court in Michigan, alleging religious and national origin discrimination and retaliation under Title VII and the ELCRA, marital status discrimination under the ELCRA, and termination in violation of Michigan public policy. Haydar contends that Faricy demonstrated bias against Haydar based on his status as a married Syrian/Muslim man, claiming that Faricy repeatedly "made references to you people, to you people need to learn how to treat your wives better."

During discovery, Haydar sought to depose Bezos. His counsel agreed not to move to compel Bezos's deposition until the other depositions were conducted. These other depositions were pushed back, and the district court allowed Haydar to propound five interrogatories to Bezos. In response to these interrogatories, Bezos stated that he had no personal knowledge of Haydar or his allegations prior to the lawsuit, that he had not participated in any decisions regarding Haydar, that he did not recall receiving Haydar's emails, and that all such emails were handled according to a "routine process." Ultimately, Bezos was not deposed.

Haydar then sought to depose Lien. Defendants moved for a protective order and submitted a declaration from Lien stating that she had reviewed three of Haydar's emails to Bezos and forwarded them to Swanson in human resources and that she had not communicated with Bezos about the content of the emails. She also declared that she had no other personal knowledge of anything to do with Haydar or his lawsuit. The district court granted the motion for a protective order, concluding that Lien had no knowledge relevant to whether the decisionmakers concerning Haydar's employment acted with discriminatory or retaliatory intent.

No. 19-2410, *Haydar v. Amazon Corporate, LLC, et al.*

After voluminous discovery, Defendants moved for summary judgment on all eight of Haydar's counts, and the district court granted the motion on four of them. As to Haydar's marital status discrimination claim, the district court found that "the heart of [Haydar's] discrimination theory relies on stereotypes about married Syrian or Muslim men, not married men generally." The court granted summary judgment, concluding that Faricy's statements did not demonstrate that he acted with animus toward Haydar because he was married. In fact, all the employees that Haydar contended received better treatment than he did were also married.

The district court also granted summary judgment to Defendants on Haydar's retaliation claims. Concluding that Haydar's claim failed on causation, the district court identified Haydar's March 5, 2015, call to Cerio and his written communications with her as the potentially protected activity. The court determined that the PIP could not have been retaliation for the protected activity because the decision to place Haydar on the PIP was made in February 2015, before Haydar made his complaints to Cerio. And Haydar was terminated more than six months after the call to Cerio, which did not support a causal link between the call and his termination. The district court noted Haydar's other theory of retaliation—that a ticket for his termination was created by human resources two minutes after Cerio was sent a copy of his September 2015 email to Bezos—but explained that the record showed that the human resources employee who created the ticket had not seen the email until after Haydar was fired.

Haydar's national origin discrimination and religious discrimination counts proceeded to trial. He appeals a series of evidentiary rulings in which the court declined to permit Haydar to introduce specific evidence. In particular, the district court did not allow Haydar to call Bezos and Lien as witnesses, for largely the same reasons the depositions had not been permitted. The court allowed the introduction of evidence concerning who EB was, that she had brought complaints of

No. 19-2410, *Haydar v. Amazon Corporate, LLC, et al.*

sex discrimination, and that she had sued Amazon, but ruled that the details of her allegations were not admissible under Fed. R. Evid. 403. Similarly, the court did not allow evidence of Haney's performance reviews after he transferred from Faricy to another manager, citing Rule 403. But it allowed the admission of Haydar's performance reviews under the business records hearsay exception. The district court did not allow Haydar to introduce the performance reviews of several comparators through Faricy, holding that no proper foundation was established. The jury ultimately found for Amazon and Faricy on the national origin and religious discrimination claims.

## II.  DISCUSSION

### A.  Standard of Review

This court reviews a district court's grant of summary judgment de novo, viewing all the evidence in the light most favorable to the nonmoving party and drawing "all justifiable inferences" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The central question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

We "review[] a district court's decisions regarding discovery matters for abuse of discretion" and "reverse only if we are firmly convinced of a mistake that affects substantial rights and amounts to more than harmless error." *Hohman v. Eadie*, 894 F.3d 776, 781 (6th Cir. 2018) (quoting *Pressman v. Franklin Nat'l Bank*, 384 F.3d 182, 187 (6th Cir. 2004)). Similarly, "[w]e review evidentiary rulings for an abuse of discretion" and "check whether the district court (1) misunderstood the law (here, the Federal Rules of Evidence), (2) relied on clearly erroneous factual findings, or (3) made a clear error of judgment." *United States v. Chavez*, 951 F.3d 349, 357–58 (6th Cir. 2020). "This standard of review is 'deferential' because a trial judge has 'broad discretion

on evidentiary rulings.'" *Flagg v. City of Detroit*, 715 F.3d 165, 175 (6th Cir. 2013) (quoting *United States v. Hart,* 70 F.3d 854, 858 (6th Cir. 1995)).

    **B.**    **Analysis**

        1.    <u>Summary Judgment</u>

            *a.*    *Retaliation Claims*

"To demonstrate a prima facie case of retaliation under Title VII and the ELCRA, the plaintiff bears the initial burden of establishing that '(1) he . . . engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action.'" *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 488–89 (6th Cir. 2020) (quoting *Beard v. AAA of Mich.*, 593 F. App'x 447, 451 (6th Cir. 2014)). Amazon argues that Haydar has failed to demonstrate the causation element. "To establish a causal connection between the protected activity and the adverse employment action, a plaintiff must present evidence 'sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action.'" *Id.* at 493 (quoting *In re Rodriguez*, 487 F.3d 1001, 1011 (6th Cir. 2007)). This means that the "unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

      The earliest activity that could constitute protected activity is Haydar's communications with Cerio, the HR manager: his message to her on February 24, 2015, and his call with her on March 5. However, the record indicates that Amazon had decided to place Haydar on a PIP by February 20, before Haydar had even been informed of his "least effective" rating and before he had raised any issue of national origin or religious discrimination with Cerio. Thus, Haydar's placement on the PIP cannot be considered a retaliatory adverse employment action against him.

-10-

No. 19-2410, *Haydar v. Amazon Corporate, LLC, et al.*

Haydar also relies on the April 29 email conversation between Faricy and human resources, during which Faricy asked if Amazon was "moving fast enough" and the HR representative mentioned prior employee EB. Haydar claims that this email is evidence that Amazon had decided to retaliate against him for his conversations with Cerio and had decided to fire him. He argues that the delay between his communications with Cerio and his termination supports an inference of causation because Amazon decided to fire him directly after he engaged in protected activity and then engaged in a "scheme to follow a process before termination."

But Faricy's notes from February 10 already reflected that Haydar was being "managed out," i.e., separated from employment. These notes were taken at a meeting that occurred before Haydar made his complaints to human resources, and before Haydar even knew about his performance rating. Similarly, Gaw approached human resources on February 17 to discuss Haydar's termination and then placed Haydar on a PIP. The evidence shows that Amazon decided to terminate Haydar in February 2015, before Haydar made his complaint, and that Amazon continued the course it had already elected. When assessing causation under Title VII, we are to "change one thing at a time and see if the outcome changes." *Bostock v Clayton County*, 140 S. Ct. 1732, 1739 (2020). If we remove Haydar's email to and call with Cerio from the record, the outcome is the same.

Haydar contends that his emails to Bezos also constitute protected activity. These emails are much closer in time to his termination. "Title VII protects only opposition to discrimination based on 'race, color, religion, sex, or national origin' Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Brown v United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (citation omitted) (quoting 42 U.S.C. § 2000e-2(a)(1)); *see Crawford v. Chipotle Mexican*

-11-

No. 19-2410, *Haydar v. Amazon Corporate, LLC, et al.*

*Grill, Inc.*, 773 F. App'x 822, 828 (6th Cir. 2019) (a charge of discrimination "need not 'be lodged with absolute formality, clarity, or precision'" (quoting *Stevens v. St. Elizabeth Med. Ctr., Inc.*, 533 F. App'x 624, 631 (6th Cir. 2013))). Haydar contends that while he did not use the "magic words," the emails were sufficient to put Amazon on notice of his complaints of discrimination on the basis of his protected characteristics.

Haydar's emails to Bezos focus on cronyism at Amazon. In the first email, Haydar alleges illegal activity, but he explains the illegal activity as managers providing him with improper guidance on which he detrimentally relied. Because Haydar provides no basis for concluding that these emails put Bezos or Amazon on notice of national origin or religious discrimination, they cannot constitute protected activity. And even if they had included protected activity, the record shows that Amazon had already decided to manage Haydar out in February 2015, before his contacts with Cerio or these emails.

Accordingly, we AFFIRM the district court's grant of summary judgment on Haydar's retaliation claims.

### b. Marital Status Discrimination Claim

MCL 37.2202(1)(a) prohibits an employer from discriminating "against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, sex, height, weight, or marital status." Haydar challenges the grant of summary judgment on this claim, contending that his marital status was a cause of his termination, i.e., a reasonable jury could find that Faricy would not have singled him out for mistreatment had he been a single Muslim man without a wife whom Faricy could insinuate he treated poorly. Haydar cites *Bostock*, 140 S.Ct. at 1740–41, for the proposition that the causation analysis should consider whether he was discriminated against based on his marital status, not whether Faricy had animus toward married people in general. Appellees respond that Haydar has

-12-

No. 19-2410, *Haydar v. Amazon Corporate, LLC, et al.*

not demonstrated that he was treated differently from other employees who were similarly situated except that they were single.

At bottom, the gravamen of Haydar's complaint is not discrimination against him because he is married, but rather discrimination against him because he is Muslim and/or of Syrian descent. The stereotype he complains about is that Muslim and/or Syrian men mistreat women, not that such married men are worse than comparable single ones. The district court correctly determined that the core of Haydar's complaint was the national origin and religious discriminations claims, which Haydar concedes: "Faricy's comments evidence a very specific and insidious stereotype: that 'you people,' *i.e.*, *Arabs and Muslims*, are domineering, abusive, and otherwise poor husbands to their wives." The issue here would be the racial and religious stereotype, not marital status.

Haydar is correct that the analysis of discrimination should occur on an individual basis. *See Bostock*, 140 S.Ct. at 1741 (affirming that the Title VII analysis focuses on the individual, noting that it would be no excuse for an employer to fire a woman "for refusing his sexual advances" and assert in his defense that "he gives preferential treatment to female employees overall") The district court correctly determined that Faricy's comments went to Haydar's national origin and religion, noted that the colleagues Haydar claimed were treated preferentially were also married, and concluded that Haydar had not been discriminated against on the basis of his marital status. A reasonable jury could not conclude, on this record, that Haydar's marital status was a but-for cause of his termination. Accordingly, we affirm the district court's summary judgment on Haydar's marital status discrimination claim.

    2.    Discovery and Trial Rulings

        *a. Bezos and Lien*

Haydar challenges the district court's grant of a protective order preventing him from deposing Lien and its grant of Amazon's motion to prevent Bezos and Lien from testifying at trial.

-13-

No. 19-2410, *Haydar v. Amazon Corporate, LLC, et al.*

Haydar maintains that Bezos and Lien "were personally involved in the circumstances leading to [his] termination." He speculates that Lien may have spoken to Faricy about Haydar's termination, but offers no evidence supporting his speculation. He claims that without being able to depose Lien, he could not develop a timeline of what happened after he sent the second email to Bezos. Haydar also argues that the district court did not specify what prejudice Amazon would suffer if Bezos and Lien were called as witnesses at trial when it conducted the balancing under Fed. R. Evid. 401 and 403.

The district court permitted Haydar to propound interrogatories to Bezos, who confirmed that he had no personal knowledge of the emails Haydar sent. Lien's declaration demonstrated that the extent of her involvement was forwarding the emails to human resources. The record does not contain evidence that either had information relevant to Haydar's claim. And the district court concluded that the risk of prejudice to Amazon—that calling Bezos and Lien as witnesses would imply to the jury that the alleged discrimination reached to the highest levels of the company— outweighed the minimal probative value because neither had any personal knowledge of Haydar's case. Haydar also had ample opportunity to depose members of the human resources team who could have had information relevant to establishing the timeline for his retaliation claim. The district court's decision to prohibit the deposition of Lien and the trial testimony of Bezos and Lien was not an abuse of its discretion.

### b. Stefan Haney

Haydar also sought to introduce evidence that Haney, a manager in Amazon Marketplace, was disciplined and terminated for sex discrimination after he was transferred out of Faricy's supervision. He claims that because other people evaluated Haney's performance as poorer than Faricy did, Faricy excused leadership deficiencies in white, non-Muslim men. The district court excluded this evidence under Fed. R. Evid. 403, determining that the evidence was unduly

prejudicial, as sex discrimination was not at issue in the case, and the evidence risked distracting and confusing the jury. Employing a comparable analysis, the district court noted that it had previously excluded Haydar's post-Amazon employment history—during which he had issues with two other employers—using essentially the same balancing analysis and reasons.

Amazon points out that the district court admitted evidence of Haney's performance from when he was supervised by Faricy that showed that Haney displayed problems with leadership skills that were "materially identical" to Haydar's. The district court, however, found that the misconduct for which Haney was terminated was not relevant because it could not be compared to Haydar's performance review, and the court excluded only evidence of that misconduct.

The district court weighed the probative value of the evidence regarding Haney against its potential for unfair prejudice and entered appropriate restrictions to temper that prejudice. It did not bar Haydar from using Haney as a comparator for performance while he worked under Faricy at Amazon. This balancing under Rule 403 was not an abuse of discretion.

        *c.*     EB

Haydar attempted to introduce at trial the details of EB's allegations against Amazon, her prior employer. In its balancing analysis under Rule 403, the district court concluded that the details of E.B.'s allegations were not relevant to Haydar's complaint and risked undue prejudice to Amazon and limited the evidence admitted. It allowed Haydar to introduce the April 2015 email referencing EB and basic background about her claims, termination, and lawsuit as context, without allowing him to introduce the prejudicial details of her unrelated claims. Again, the court tailored the information Haydar could introduce to avoid undue prejudice to Amazon without preventing Haydar from making relevant arguments. This is a reasonable application of Rule 403 and is not an abuse of the court's broad discretion.

-15-

No. 19-2410, *Haydar v. Amazon Corporate, LLC, et al.*

### d. 360 Feedback

Haydar raised two complaints concerning the admission at trial of "360 Feedback," Amazon's peer review system. First, he argues that the district court abused its discretion when it denied his motion to exclude the negative feedback he received at Amazon. Haydar contends that the feedback used was given by people who did not testify at trial and could not be cross-examined, was offered for the truth of the matter asserted, and was therefore hearsay. He claims these reviews presented a hearsay within hearsay problem, as the feedback was (1) submitted by Amazon employees and then (2) used in the evaluations.

The district court concluded that the Feedback fell within the business records exception because the feedback was solicited, and the evaluations conducted, in the regular course of business. Haydar now asserts that the district court failed to consider that the feedback was unreliable.

Fed. R. of Evid. 803(6) provides: "A record of an act, event, condition, opinion, or diagnosis" is admissible as an exception to the prohibition on hearsay when, among other requirements, "the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit[.]" Both the solicitation of the feedback from Amazon employees and the production of the performance reviews by the evaluated person's immediate supervisor were plainly conducted in the regular course of business, because the feedback formed a part of the performance reviews, and the reviews occurred annually. *See United States v. Gurr*, 471 F.3d 144, 152 (D.C. Cir. 2006) (records are "excepted from the hearsay rule provided 'both the source and the recorder of the information, as well as every other participant in the chain producing the record, are acting in the regular course of business.'" (quoting *United States v. Baker*, 693 F.2d 183, 188 (D.C. Cir. 1982))). The district court, moreover, explicitly considered the reliability and trustworthiness of the feedback. Finally,

No. 19-2410, *Haydar v. Amazon Corporate, LLC, et al.*

Haydar argues that the feedback was not limited to the state of mind of the decision-makers when it was introduced. The part of the trial transcript referenced in his brief, however, indicates that the evidence was offered for that very purpose:

> In their opening, Defendants stated, "You'll see evidence, lots of evidence of people *unhappy* with Mr. Haydar. . . . They were *unhappy* that he was constantly undermining and insulting managers and peers." [Trial Transcript Vol. II, R. 158 PageID 13139] (emphasis added).

Haydar's second complaint is that the district court prevented him from introducing the evaluations of some of his comparators through Faricy on the basis that he failed to lay the proper foundation. Faricy testified that he had not seen the performance review documents in question. He indicated that he may have participated in a discussion concerning that particular Amazon employee's resulting ratings, but had not seen the actual document or the 360 Feedback it contained. The district court concluded that this exchange did not provide a sufficient foundation for Faricy's knowledge of how the records were maintained.

Business records must be admitted through "the testimony of the custodian or another qualified witness." Fed. R. Evid. 803(6)(D). Haydar does not contend that Faricy was the custodian. When analyzing whether a witness is a "qualified witness" under the rule, we ask whether the witness is "familiar with the record keeping procedures of the organization." *Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 576 (6th Cir. 1999). If so, the witness need not have personal knowledge of the preparation of the records. *Id.* The record does not show that Faricy was asked about his knowledge of Amazon's record-keeping procedures; however, Haydar successfully introduced evidence concerning two of his comparators through another witness. The district court's decision that Haydar failed to lay the proper foundation to introduce the 360 Feedback regarding other comparators through Faricy was not an abuse of discretion.

-17-

No. 19-2410, *Haydar v. Amazon Corporate, LLC, et al.*

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgments of the district court regarding summary judgment and its evidentiary rulings during discovery and at trial.

-18-